FILED
2017 Feb-07  AM 09:17
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRCIT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| KATHY WILLIAMS, | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | **CIVIL ACTION NO.:** |
| v. | ) | |
| | ) | **JURY DEMAND** |
| CELLCO PARTNERSHIP D/B/A, | ) | |
| VERIZON WIRELESS, | ) | |
| | ) | |
| DEFENDANT. | ) | |

---

## COMPLAINT

---

## I. JURISDICTION

1.     The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, 1343(4). This is a suit authorized and instituted pursuant to Title VII of the Act of Congress known as the "Civil Rights Act of 1964," as amended by the "Civil Rights Act of 1991, and 42 U.S.C. § 1981, as amended," and Plaintiff's pendent state law claims. The jurisdiction of this court is invoked to secure protection for and to redress the deprivation of rights secured by Plaintiff's pendent state law claims, 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1981, providing injunctive and other relief against race discrimination, racial harassment, retaliation in

employment, and violations of state law.

## II. PARTIES

2.      Plaintiff, Kathy Williams, ("Plaintiff") is an African American female citizen of the United States and is a resident of Leeds, Alabama.

3.      Defendant, Cellco Partnership d/b/a Verizon Wireless, ("Defendant") is a foreign corporation. The Defendant is engaged in business in Alabama.

4.      At all times relevant to this action, Defendant has maintained and operated a business in Alabama. Defendant is engaged in an industry affecting commerce and has fifteen (15) or more employees and is an employer within the meaning of 42 U.S.C. § 2000e (b), (g) and (h).

## III. ADMINISTRATIVE PROCEDURES

5.      Plaintiff hereby adopts and realleges paragraphs one (1) through four (4) herein above as if fully set forth herein.

6.      Plaintiff brings this action for the unlawful employment practices and acts of intentional discrimination by his employer, Defendant.

7.      This action seeks to redress unlawful employment practices resulting from the acts of Defendant, their agents, servants, and employees committed with respect to Plaintiff's employment; and for a permanent injunction restraining Defendant from maintaining a habit and/or practice of discriminating against

and/or retaliating against the Plaintiff and others similarly situated on account of racial discrimination, and retaliation.

8.     On August 17, 2015, within 180 days of the last discriminatory and retaliatory act of which Plaintiff complains, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). (Exhibit 1).

9.     Plaintiff's Notice of Right to Sue was mailed by the EEOC to the Plaintiff on November 8, 2016, and Plaintiff filed suit within ninety (90) days of receipt of her Notice of Right to Sue.  (Exhibit 2).

10.     Administrative prerequisites for filing suit have been satisfied, and Plaintiff is entitled to bring this action.

## IV.  STATEMENT OF PLAINTIFF'S FACTUAL ALLEGATIONS AND CLAIMS

11.     Plaintiff hereby adopts and realleges paragraphs one (1) through ten (10) herein above as if fully set forth herein.

12.     Plaintiff, Kathy Williams is an African American female.

13.     Plaintiff began working for the Defendant on or about May 16, 2005 as a Representative-Retail Customer Support.

14.     Plaintiff was terminated on or about July 16, 2015.

15.     Plaintiff believes she was replaced by a Caucasian.

16.     At the time of Plaintiff's termination, she was employed as an ASM

or Solutions Manager at the Riverchase location.

17.   Prior to Plaintiff working at the Riverchase location, Plaintiff worked at the Trussville location.

18.   Plaintiff's Caucasian Store Manager at the Trussville location was Kerry Gould.

19.   Ms. Pate became the District manager and Mr. Gould's supervisor while Plaintiff worked at the Trussville store.

20.   While Plaintiff worked at the Trussville store, Plaintiff heard Mr. Gould talk about "KKK" protests in the store.

21.   Plaintiff complained to Mr. Gould that it sounded like he was a Ku Klux Klan because of the way he was talking.

22.   Plaintiff heard Mr. Gould state in the store that President Obama was only for the black employees.

23.   Plaintiff also heard Mr. Gould say that no one wanted to work at the Trussville store because it had the "black clique" and that he wanted to "change the vernacular" of the Trussville store because it was "too hood."

24.   During the last few years of Plaintiff's employment, Plaintiff has seen Defendant demote and terminate African American employees and replace them with Caucasian employees.

25.   Mr. Gould has a history of discriminating against African American

employees and customers, making racially offensive comments, and retaliating against employees.

26.    African American employees working in the Trussville store reported racial complaints about Mr. Gould.

27.    Michelle Dennis, Caucasian Human Resources employee, investigated the complaints against Mr. Gould.

28.    No action was taken against Mr. Gould who reported directly to Ms. Pate.

29.    Whitney Kuba was the Caucasian Store Manager for the Riverchase location at the time of Plaintiff's termination.

30.    In or around May 2015, Ms. Kuba came to the store as the new Store Manager.

31.    Employees complained that Ms. Kuba was stating that Plaintiff would never be a manager long for the company.

32.    Employees also complained that Ms. Kuba stated another African American employee, Terhan Tinker, would never be a manager in a redesigned store and that Abdul Lanier, African American, would not be a manager for long because he was "too loud and black."

33.    Monica Pate was the Caucasian District Manager at the time of Plaintiff's termination.

34.    Ms. Pate informed Plaintiff she was being terminated based on an investigation into the theft of Plaintiff's cell phone.

35.    In or around April 2015, within a few months before Plaintiff's termination, Ms. Pate confronted Plaintiff and asked if Plaintiff said Whitney Kuba was prejudice.

36.    Plaintiff told Ms. Pate that she did not make that statement about Ms. Kuba.

37.    Ms. Pate then asked Plaintiff if Plaintiff said the reason Ms. Pate was in a lawsuit was because Ms. Kuba was the store manager.

38.    Plaintiff informed Ms. Pate that she stated the reason Defendant was in a lawsuit for race discrimination was because she handpicked Caucasian employees for jobs and promised Caucasian employees jobs before they were posted.

39.    During this conversation with Ms. Pate in or around April 2015, Plaintiff complained to Ms. Pate that Ms. Kuba said, "fat black employees don't fit the mold."

40.    Plaintiff also complained to Ms. Pate that she and the Defendant handpicked Caucasians for promotions and it was discriminatory.   Ms. Pate's assistant, Eloy Escabor, was also present for this conversation.

41.    Plaintiff's complaints to Ms. Pate constitute protected activity.

42.    There is a causal connection between Plaintiff's complaints and protected activity and her termination.

43.    On or about June 17, 2015, Plaintiff was working in the Riverchase store and her cell phone was stolen.

44.    Plaintiff was working and demonstrating the speakers on the cell phone by playing music.  When the music stopped, Plaintiff noticed her cell phone was gone.

45.    In an attempt to locate her cell phone, Plaintiff politely asked all of the customers in the store if they had seen her cell phone.

46.    Plaintiff informed Ms. Kuba, Caucasian Store Manager, that her cell phone had been taken.  Ms. Kuba instructed Plaintiff not to worry about the theft of her phone and to fill out an incident report.

47.    Shortly after Plaintiff reported the theft to Ms. Kuba, Chadwick (LNU), an Operations Specialist, told Ms. Kuba that he wanted to call the Police.

48.    Plaintiff was instructed to call the Police and asked why she was being instructed to call the Police, as Defendant had never engaged in that practice in the past.

49.    Plaintiff asked Chadwick to call the Police as he was the person Ms. Kuba spoke with.

50.    The Police arrived at the store and Plaintiff told them her cell phone

had been taken, and the Police questioned some of the customers in the store.

51.    One of the Police Officers went outside to look inside a customer's car, and the Police officer told Plaintiff he believed her cell phone was in the customer's car.

52.    Ms. Kuba told Plaintiff to take a lunch break and when Plaintiff returned, Ms. Kuba called her to come into the office of Leigh Anne Barrett.

53.    Ms. Kuba stated that she and Ms. Barrett had reviewed the video.

54.    Plaintiff also viewed the video and it clearly showed what appeared to be a customer putting something in his pocket.

55.    Ms. Kuba falsely claimed the video showed something different than what it actually showed.

56.    Plaintiff asked if Ms. Kuba and Ms. Barrett watched the same video because it was so obvious someone, a customer, putting something in their pocket.

57.    Plaintiff was then asked to write a statement about her cell phone being stolen.

58.    On or about June 23, 2015, Michelle Dennis, Caucasian Human Resources employee, came to the store to investigate the theft of Plaintiff's cell phone.

59.    Ms. Dennis spoke with Plaintiff about the incident, and Plaintiff told Ms. Dennis she had written a statement about the incident, but Ms. Kuba asked

Plaintiff not to tell anyone and to "keep it to herself."

60.   Plaintiff explained the incident to Ms. Dennis and Ms. Dennis asked Plaintiff about the Police being called to the store.

61.   Plaintiff told Ms. Dennis she did not know why she was told to call the Police because throughout her employment with Defendant the Police had never been called when there had been similar incidents.

62.   Plaintiff asked Ms. Dennis why she was there for something so simple, and Ms. Dennis asked Plaintiff if she said or shouted a customer had her cell phone in their pocket.

63.   Plaintiff told Ms. Dennis that she did not shout in the store, but quietly and politely asked customers if they saw her cell phone.

64.   Plaintiff also let Ms. Dennis know that she did not accuse a customer of having her cell phone in his pocket.

65.   On or about July 16, 2015, Monica Pate, Caucasian District Manager, came to talk to Plaintiff and terminated Plaintiff's employment.

66.   Plaintiff asked Ms. Pate if she was being written up and asked to see the write up.  Plaintiff also asked Ms. Pate what she could have done differently. Ms. Pate did not answer Plaintiff's question, but Ms. Pate did inform Plaintiff that she was being terminated.

67.   On or about July 16, 2015, Plaintiff called Tracie Lovell, Human

Resources in Atlanta.

68.    Plaintiff told Ms. Lovell that she was calling about her termination, and Ms. Lovell told Plaintiff that she was terminated for an "egregious situation."

69.    Plaintiff asked Ms. Lovell how she could go from no write ups to termination. Plaintiff also asked Ms. Lovell about alleged customer complaints because Plaintiff had never been told she had any customer complaints.

70.    In addition, Plaintiff informed Ms. Lovell about her complaints of race discrimination to Moncia Pate and Mr. Escobar and about Ms. Kuba's racial comments. Plaintiff told Ms. Lovell that Ms. Kuba stated the Plaintiff was a racist and that she did not make any such comment to Ms. Kuba.

71.    After Plaintiff's termination, Ms. Dennis called Plaintiff and Plaintiff told her about the conversation she had with Tracie Lovell. Plaintiff complained to Ms. Dennis that she was terminated because of her race and in retaliation for her complaints of race discrimination to Ms. Pate, Caucasian District Manager.

72.    African American employee Elliott Carter, was employed in Tuscaloosa at the McFarland location.

73.    Mr. Carter applied for a business sales position and was denied the position.

74.    A less qualified Caucasian, Robin Harris, received the position.

75.    Ms. Pate made the decision to hire Robin Harris, along with input

from Human Resources.

76.    Mr. Carter filed an EEOC Charge and later filed a lawsuit.

77.    Mr. Carter's lawsuit was the lawsuit Plaintiff was questioned about and one of the racial discriminatory incidents Plaintiff complained about when she complained that Caucasian employees were handpicked and selected for promotions before the positions were ever posted.

78.    Margo Mills, African American employee, filed a charge of discrimination against Defendant regarding her claims of racial discrimination, harassment and retaliation.

79.    Ms. Mills complained on or about December 18, 2014.

80.    Monica Pate was the District Manager over Ms. Mills.

81.    Ms. Mills worked at the Trusville location during the time period Kerry Gould was the Store Manager/assistant area manager.

82.    On or about December 18, 2014, Ms. Mills complained in writing about the racial discrimination and harassment and sent an email to Monica Pate, Erik Lee, Jonahtan LeCompte, Michele Dennis, Beverly L. Mullins, Tracie Lovell, Kerry Gould, and Shawntay E. Meeks.

83.    Cedric Atchison, African American employee, also worked at the Trusville location during the time period Kerry Gould was the Store Manager and Monica Pate was the District Manager.

84.    Mr. Atchison complained to Michelle Dennis, Human Resources, about Mr. Gould and his racially offensive conduct. Mr. Atchison complained to managerial employees as well about Mr. Gould's racially offensive conduct.

85.    Ms. Pate has a history of hiring and/or promoting Caucasian's over qualified African American's.

## COUNT ONE

### STATEMENT OF PLAINTIFF'S TITLE VII AND 42 U.S.C. § 1981 RACE DISCRIMINATION/HARASSMENT/HOSTILE ENVIRONMENT CLAIMS

86.    Plaintiff hereby adopts and realleges paragraphs (1) through eighty-five (85) herein above as if fully set forth herein.

87.    Plaintiff, Kathy Williams is an African American female.

88.    Plaintiff began working for the Defendant on or about May 16, 2005 as a Representative-Retail Customer Support.

89.    Plaintiff was terminated on or about July 16, 2015.

90.    Plaintiff believes she was replaced by a Caucasian.

91.    At the time of Plaintiff's termination, she was employed as an ASM or Solutions Manager at the Riverchase location.

92.    Prior to Plaintiff working at the Riverchase location, Plaintiff worked at the Trussville location.

93.    Plaintiff's Caucasian Store Manager at the Trussville location was

Kerry Gould.

94.    Ms. Pate became the District manager and Mr. Gould's supervisor while Plaintiff worked at the Trussville store.

95.    While Plaintiff worked at the Trussville store, Plaintiff heard Mr. Gould talk about "KKK" protests in the store.

96.    Plaintiff complained to Mr. Gould that it sounded like he was a Ku Klux Klan because of the way he was talking.

97.    Plaintiff heard Mr. Gould state in the store that President Obama was only for the black employees.

98.    Plaintiff also heard Mr. Gould say that no one wanted to work at the Trussville store because it had the "black clique" and that he wanted to "change the vernacular" of the Trussville store because it was "too hood."

99.    During the last few years of Plaintiff's employment, Plaintiff has seen Defendant demote and terminate African American employees and replace them with Caucasian employees.

100.   Mr. Gould has a history of discriminating against African American employees and customers, making racially offensive comments, and retaliating against employees.

101.   African American employees working in the Trussville store reported racial complaints about Mr. Gould.

102.   Michelle Dennis, Caucasian Human Resources employee, investigated the complaints against Mr. Gould.

103.   No action was taken against Mr. Gould who reported directly to Ms. Pate.

104.   Whitney Kuba was the Caucasian Store Manager for the Riverchase location at the time of Plaintiff's termination.

105.   In or around May 2015, Ms. Kuba came to the store as the new Store Manager.

106.   Employees complained that Ms. Kuba was stating that Plaintiff would never be a manager long for the company.

107.   Employees also complained that Ms. Kuba stated another African American employee, Terhan Tinker, would never be a manager in a redesigned store and that Abdul Lanier, African American, would not be a manager for long because he was "too loud and black."

108.   Monica Pate was the Caucasian District Manager at the time of Plaintiff's termination.

109.   Ms. Pate informed Plaintiff she was being terminated based on an investigation into the theft of Plaintiff's cell phone.

110.   In or around April 2015, within a few months before Plaintiff's termination, Ms. Pate confronted Plaintiff and asked if Plaintiff said Whitney Kuba

was prejudice.

111.   Plaintiff told Ms. Pate that she did not make that statement about Ms. Kuba.

112.   Ms. Pate then asked Plaintiff if Plaintiff said the reason Ms. Pate was in a lawsuit was because Ms. Kuba was the store manager.

113.   Plaintiff informed Ms. Pate that she stated the reason Defendant was in a lawsuit for race discrimination was because she handpicked Caucasian employees for jobs and promised Caucasian employees jobs before they were posted.

114.   During this conversation with Ms. Pate in or around April 2015, Plaintiff complained to Ms. Pate that Ms. Kuba said, "fat black employees don't fit the mold."

115.   Plaintiff also complained to Ms. Pate that she and the Defendant handpicked Caucasians for promotions and it was discriminatory.   Ms. Pate's assistant, Eloy Escabor, was also present for this conversation.

116.   On or about June 17, 2015, Plaintiff was working in the Riverchase store and her cell phone was stolen.

117.   Plaintiff was working and demonstrating the speakers on the cell phone by playing music.   When the music stopped, Plaintiff noticed her cell phone was gone.

118.   In an attempt to locate her cell phone, Plaintiff politely asked all of the customers in the store if they had seen her cell phone.

119.   Plaintiff informed Ms. Kuba, Caucasian Store Manager, that her cell phone had been taken.  Ms. Kuba instructed Plaintiff not to worry about the theft of her phone and to fill out an incident report.

120.   Shortly after Plaintiff reported the theft to Ms. Kuba, Chadwick (LNU), an Operations Specialist, told Ms. Kuba that he wanted to call the Police.

121.   Plaintiff was instructed to call the Police and asked why she was being instructed to call the Police, as Defendant had never engaged in that practice in the past.

122.   Plaintiff asked Chadwick to call the police as he was the person Ms. Kuba spoke with.

123.   The Police arrived at the store and Plaintiff told them her cell phone had been taken, and the Police questioned some of the customers in the store.

124.   One of the Police Officers went outside to look inside a customer's car, and the Police officer told Plaintiff he believed her cell phone was in the customer's car.

125.   Ms. Kuba told Plaintiff to take a lunch break and when Plaintiff returned, Ms. Kuba called her to come into the office of Leigh Anne Barrett.

126.   Ms. Kuba stated that she and Ms. Barrett had reviewed the video.

127.   Plaintiff also viewed the video and it clearly showed what appeared to be a customer putting something in his pocket.

128.   Ms. Kuba falsely claimed the video showed something different than what it actually showed.

129.   Plaintiff asked if Ms. Kuba and Ms. Barrett watched the same video because it was so obvious someone, a customer, putting something in their pocket.

130.   Plaintiff was then asked to write a statement about her cell phone being stolen.

131.   On or about June 23, 2015, Michelle Dennis, Caucasian Human Resources employee, came to the store to investigate the theft of Plaintiff's cell phone.

132.   Ms. Dennis spoke with Plaintiff about the incident, and Plaintiff told Ms. Dennis she had written a statement about the incident, but Ms. Kuba asked Plaintiff not to tell anyone and to "keep it to herself."

133.   Plaintiff explained the incident to Ms. Dennis and Ms. Dennis asked Plaintiff about the Police being called to the store.

134.   Plaintiff told Ms. Dennis she did not know why she was told to call the Police because throughout her employment with Defendant the Police had never been called when there had been similar incidents.

135.   Plaintiff asked Ms. Dennis why she was there for something so

simple, and Ms. Dennis asked Plaintiff if she said or shouted a customer had her cell phone in their pocket.

136.   Plaintiff told Ms. Dennis that she did not shout in the store, but quietly and politely asked customers if they saw her cell phone.

137.   Plaintiff also let Ms. Dennis know that she did not accuse a customer of having her cell phone in his pocket.

138.   On or about July 16, 2015, Monica Pate, Caucasian District Manager, came to talk to Plaintiff.

139.   Plaintiff asked Ms. Pate if she was being written up and asked to see the write up.

140.   Plaintiff also asked Ms. Pate what she could have done differently.

141.   Ms. Pate did not answer Plaintiff's question, but Ms. Pate did inform Plaintiff that she was being terminated.

142.   On or about July 16, 2015, Plaintiff called Tracie Lovell, Human Resources in Atlanta.

143.   Plaintiff told Ms. Lovell that she was calling about her termination, and Ms. Lovell told Plaintiff that she was terminated for an "egregious situation."

144.   Plaintiff asked Ms. Lovell how she could go from no write ups to termination.

145.   Plaintiff also asked Ms. Lovell about alleged customer complaints

because Plaintiff had never been told she had any customer complaints.

146.   In addition, Plaintiff informed Ms. Lovell about her complaints of race discrimination to Michelle Dennis, Moncia Pate and Mr. Escobar and about Ms. Kuba's racial comments.

147.   Plaintiff told Ms. Lovell that Ms. Kuba stated the Plaintiff was a racist and that she did not make any such comment to Ms. Kuba.

148.   After Plaintiff's termination, Ms. Dennis called Plaintiff complained to Ms. Dennis that she was terminated because of her race and in retaliation for her complaints of race discrimination to Ms. Pate, Caucasian District Manager.

149.   African American employee Elliott Carter was employed in Tuscaloosa at the McFarland location.

150.   Mr. Carter applied for a business sales position and was denied the position.

151.   A less qualified Caucasian, Robin Harris, received the position.

152.   Ms. Pate made the decision to hire Robin Harris, along with input from Human Resources.

153.   Mr. Carter filed an EEOC Charge and later filed a lawsuit.

154.   Mr. Carter's lawsuit was the lawsuit Plaintiff was questioned about and one of the racial discriminatory incidents Plaintiff complained about when she complained that Caucasian employees were handpicked and selected for

promotions before the positions were ever posted.

155. Margo Mills, African American employee, filed a charge of discrimination against Defendant regarding her claims of racial discrimination, harassment and retaliation.

156. Ms. Mills complained on or about December 18, 2014.

157. Monica Pate was the District Manager over Ms. Mills.

158. Ms. Mills worked at the Trussville location during the time period Kerry Gould was the Store Manager/assistant area manager.

159. On or about December 18, 2014, Ms. Mills complained in writing about the racial discrimination and harassment and sent an email to Monica Pate, Erik Lee, Jonahtan LeCompte, Michele Dennis, Beverly L. Mullins, Tracie Lovell, Kerry Gould, and Shawntay E. Meeks.

160. Cedric Atchison, African American employee, also worked at the Trussville location during the time period Kerry Gould was the Store Manager and Monica Pate was the District Manager. Kerry Gould made racially offensive comments to Mr. Atchison and in his presence. Mr. Gould discriminated against Mr. Atchison because of his race and subjected Mr. Atchison to a racially offensive work environment.

161. Ms. Pate has a history of hiring and/or promoting Caucasian's over qualified African American's.

162.   There is a habit and/or pattern of discrimination in the district managed by Ms. Pate as other employees have filed EEOC charges and lawsuits and complained about racial discrimination.

163.   Defendant subjected Plaintiff to racial discrimination, racial harassment, and a racially hostile working environment because of her race.

164.   Plaintiff has been unjustly disciplined, subjected to racially offensive comments, forced to work in a racially hostile environment, discriminated against, treated differently, denied pay, denied time off, harassed, and terminated by Defendant because of her race, African American.

165.   Defendant has a habit and/or practice of discriminating against African-Americans, harassing African Americans and condoning and/or allowing racial discrimination and a racially hostile environment.

166.   Supervisors and managers employed by Defendant engaged in these unlawful practices, were aware these unlawful practices by other employees, encouraged and/or condoned these unlawful practices.

167.   Defendant failed to train its employees on its purported antidiscrimination/antiharassment policies and reporting procedures.

168.   Defendant's dissemination of any antidiscrimination/antiharassment policies and reporting procedures has been ineffective.

169.   Plaintiff has been directly affected by the racially discriminatory and

racially harassing practices described in this Complaint.

170.   Defendant's conduct and the conduct of its employees was so severe or pervasive as to create a racially hostile working environment to which Plaintiff was subjected.

171.   Defendant knew or should have known of the racial discrimination and racial harassment Plaintiff was forced to endure.

172.   Defendant failed to take any prompt and effective action reasonably calculated to result in the prevention of and/or remedy of the racial discrimination and racial harassment/hostile environment Plaintiff was forced to endure.

173.   Defendant's actions were and continue to be malicious and Plaintiff has been harmed.

174.   Defendant's actions were and continue to be in reckless disregard of Plaintiff's federally protected rights.

175.   Defendant's actions are in violation of Title VII of the "Civil Rights Act of 1964," as amended and 42 U.S.C. § 1981, as amended.

176.   The Plaintiff has no plain, adequate or complete remedy at law to redress the wrongs alleged herein, and this suit for back pay, front pay, compensatory damages, punitive damages, attorney's fees, expenses, costs, injunctive relief, and declaratory judgment is his only means of securing adequate relief.

177.   Plaintiff is now suffering and will continue to suffer irreparable injury from Defendant's unlawful policies and practices set forth herein unless enjoined by this Court.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff requests that this Court adopt jurisdiction of this action and award Plaintiff the following relief:

a.   Enter a declaratory judgment that Defendant's policies, practices and procedures complained of herein have violated and continue to violate the rights of the Plaintiff as secured by Title VII of the "Civil Rights Act of 1964," as amended, and 42 U.S.C. § 1981, as amended;

b.   Grant Plaintiff a permanent injunction enjoining Defendant's, their Agents, Successors, Employees, Attorneys, and those acting in concert with Defendant or at Defendant's request from violating Title VII of the "Civil Rights of 1964," as amended, and 42 U.S.C. § 1981, as amended;

c.   Grant Plaintiff an Order requiring Defendant make her whole by granting appropriate declaratory relief, compensatory damages (including damages for mental anguish), punitive damages, interest, attorney's fees, expenses, costs; and

d.   Plaintiff prays for such other, further, different or additional relief and benefits as justice may require.

## COUNT TWO

## STATEMENT OF PLAINTIFF'S TITLE VII AND 42 U.S.C. § 1981 RETALIATION CLAIMS

178.   Plaintiff adopts and realleges paragraphs one (1) through one hundred seventy-seven (177) as if fully set forth herein.

179.   Plaintiff, Kathy Williams is an African American female.

180.   Plaintiff began working for the Defendant on or about May 16, 2005 as a Representative-Retail Customer Support.

181.   Plaintiff was terminated on or about July 16, 2015.

182.   Plaintiff believes she was replaced by a Caucasian.

183.   At the time of Plaintiff's termination, she was employed as an ASM or Solutions Manager at the Riverchase location.

184.   Prior to Plaintiff working at the Riverchase location, Plaintiff worked at the Trussville location.

185.   Plaintiff's Caucasian Store Manager at the Trussville location was Kerry Gould.

186.   Ms. Pate became the District manager and Mr. Gould's supervisor while Plaintiff worked at the Trussville store.

187.   While Plaintiff worked at the Trussville store, Plaintiff heard Mr.

Gould talk about "KKK" protests in the store.

188.  Plaintiff complained to Mr. Gould that it sounded like he was a Ku Klux Klan because of the way he was talking.

189.  Plaintiff heard Mr. Gould state in the store that President Obama was only for the black employees.

190.  Plaintiff also heard Mr. Gould say that no one wanted to work at the Trussville store because it had the "black clique" and that he wanted to "change the vernacular" of the Trussville store because it was "too hood."

191.  Mr. Gould has a history of discriminating against African American employees and customers, making racially offensive comments, and retaliating against employees.

192.  African American employees working in the Trussville store reported racial complaints about Mr. Gould.

193.  Michelle Dennis, Caucasian Human Resources employee, investigated the complaints against Mr. Gould.

194.  No action was taken against Mr. Gould who reported directly to Ms. Pate.

195.  Whitney Kuba was the Caucasian Store Manager for the Riverchase location at the time of Plaintiff's termination.

196.  In or around May 2015, Ms. Kuba came to the store as the new Store

Manager.

197.   Employees complained that Ms. Kuba was stating that Plaintiff would never be a manager long for the company.

198.   Employees also complained that Ms. Kuba stated another African American employee, Terhan Tinker, would never be a manager in a redesigned store and that Abdul Lanier, African American, would not be a manager for long because he was "too loud and black."

199.   Monica Pate was the Caucasian District Manager at the time of Plaintiff's termination.

200.   Ms. Pate informed Plaintiff she was being terminated based on an investigation into the theft of Plaintiff's cell phone.

201.   In or around April 2015, within a few months before Plaintiff's termination, Ms. Pate confronted Plaintiff and asked if Plaintiff said Whitney Kuba was prejudice.

202.   Plaintiff told Ms. Pate that she did not make that statement about Ms. Kuba.

203.   Ms. Pate then asked Plaintiff if Plaintiff said the reason Ms. Pate was in a lawsuit was because Ms. Kuba was the store manager.

204.   Plaintiff informed Ms. Pate that she stated the reason Defendant was in a lawsuit for race discrimination was because she handpicked Caucasian

employees for jobs and promised Caucasian employees jobs before they were posted.

205.   During this conversation with Ms. Pate in or around April 2015, Plaintiff complained to Ms. Pate that Ms. Kuba said, "fat black employees don't fit the mold."

206.   Plaintiff also complained to Ms. Pate that she and the Defendant handpicked Caucasians for promotions and it was discriminatory.   Ms. Pate's assistant, Eloy Escabor, was also present for this conversation.

207.   Plaintiff's complaints to Ms. Pate constitute protected activity.

208.   There is a causal connection between Plaintiff's complaints and protected activity and her termination.

209.   On or about June 17, 2015, Plaintiff was working in the Riverchase store and her cell phone was stolen.

210.   Plaintiff was working and demonstrating the speakers on the cell phone by playing music.   When the music stopped, Plaintiff noticed her cell phone was gone.

211.   In an attempt to locate her cell phone, Plaintiff politely asked all of the customers in the store if they had seen her cell phone.

212.   Plaintiff informed Ms. Kuba, Caucasian Store Manager, that her cell phone had been taken.   Ms. Kuba instructed Plaintiff not to worry about the theft of

her phone and to fill out an incident report.

213.   Shortly after Plaintiff reported the theft to Ms. Kuba, Chadwick (LNU), an Operations Specialist, told Ms. Kuba that he wanted to call the Police.

214.   Plaintiff was instructed to call the Police and asked why she was being instructed to call the Police, as Defendant had never engaged in that practice in the past.

215.   Plaintiff asked Chadwick to call the Police as he was the person Ms. Kuba spoke with.

216.   The Police arrived at the store and Plaintiff told them her cell phone had been taken, and the Police questioned some of the customers in the store.

217.   One of the Police Officers went outside to look inside a customer's car, and the Police officer told Plaintiff he believed her cell phone was in the customer's car.

218.   Ms. Kuba told Plaintiff to take a lunch break and when Plaintiff returned, Ms. Kuba called her to come into the office of Leigh Anne Barrett.

219.   Ms. Kuba stated that she and Ms. Barrett had reviewed the video.

220.   Plaintiff also viewed the video and it clearly showed what appeared to be a customer putting something in his pocket.

221.   Ms. Kuba falsely claimed the video showed something different than what it actually showed.

222.   Plaintiff asked if Ms. Kuba and Ms. Barrett watched the same video because it was so obvious someone, a customer, putting something in their pocket.

223.   Plaintiff was then asked to write a statement about her cell phone being stolen.

224.   On or about June 23, 2015, Michelle Dennis, Caucasian Human Resources employee, came to the store to investigate the theft of Plaintiff's cell phone.

225.   Ms. Dennis spoke with Plaintiff about the incident, and Plaintiff told Ms. Dennis she had written a statement about the incident, but Ms. Kuba asked Plaintiff not to tell anyone and to "keep it to herself."

226.   Plaintiff explained the incident to Ms. Dennis and Ms. Dennis asked Plaintiff about the Police being called to the store.

227.   Plaintiff told Ms. Dennis she did not know why she was told to call the Police because throughout her employment with Defendant the Police had never been called when there had been similar incidents.

228.   Plaintiff asked Ms. Dennis why she was there for something so simple, and Ms. Dennis asked Plaintiff if she said or shouted a customer had her cell phone in their pocket.

229.   Plaintiff told Ms. Dennis that she did not shout in the store, but quietly and politely asked customers if they saw her cell phone.

230.   Plaintiff also let Ms. Dennis know that she did not accuse a customer of having her cell phone in his pocket.

231.   On or about July 16, 2015, Monica Pate, Caucasian District Manager, came to talk to Plaintiff.

232.   Plaintiff asked Ms. Pate if she was being written up and asked to see the write up.

233.   Plaintiff also asked Ms. Pate what she could have done differently.

234.   Ms. Pate did not answer Plaintiff's question, but Ms. Pate did inform Plaintiff that she was being terminated.

235.   On or about July 16, 2015, Plaintiff called Tracie Lovell, Human Resources in Atlanta.

236.   Plaintiff told Ms. Lovell that she was calling about her termination, and Ms. Lovell told Plaintiff that she was terminated for an "egregious situation."

237.   Plaintiff asked Ms. Lovell how she could go from no write ups to termination.

238.   Plaintiff also asked Ms. Lovell about alleged customer complaints because Plaintiff had never been told she had any customer complaints.

239.   In addition, Plaintiff informed Ms. Lovell about the racial issues with Kerry Gould, her complaints of race discrimination to Moncia Pate and Mr. Escobar, her complaints to Michelle Dennis and about Ms. Kuba's racial

comments.

240.   After Plaintiff's termination, Ms. Dennis called Plaintiff and Plaintiff told her about the conversation she had with Tracie Lovell.

241.   Plaintiff complained to Ms. Dennis that she was terminated because of her race and in retaliation for her complaints of race discrimination to Ms. Pate, Caucasian District Manager.

242.   Other African American employees have been retaliated against.

243.   African American employee Elliott Carter was employed in Tuscaloosa at the McFarland location and Mr. Carter complained about racial discrimination. Mr. Carter also complained that he was retaliated against.

244.   Mr. Carter filed an EEOC Charge and later filed a lawsuit.

245.   Mr. Carter's lawsuit was the lawsuit Plaintiff was questioned about and one of the racial discriminatory incidents Plaintiff complained about when she complained that Caucasian employees were handpicked and selected for promotions before the positions were ever posted.

246.   Margo Mills, African American employee, filed a charge of discrimination against Defendant regarding her claims of racial discrimination, harassment and retaliation.

247.   Ms. Mills complained on or about December 18, 2014.

248.   Monica Pate was the District Manager over Ms. Mills.

249.   Ms. Mills worked at the Trussville location during the time period Kerry Gould was the Store Manager/assistant area manager.

250.   On or about December 18, 2014, Ms. Mills complained in writing about the racial discrimination and harassment and sent an email to Monica Pate, Erik Lee, Jonathan LeCompte, Michele Dennis, Beverly L. Mullins, Tracie Lovell, Kerry Gould, and Shawntay E. Meeks.

251.   Cedric Atchison, African American employee, also worked at the Trussville location during the time period Kerry Gould was the Store Manager and Monica Pate was the District Manager.

252.   Mr. Atchison was harassed, discriminated against and forced to work in a racially hostile environment because of his race, African American. Mr. Atchison complained to Michelle Dennis, Human Resources, about Mr. Gould and his racially offensive conduct. Mr. Atchison complained to managerial employees as well about Mr. Gould's racially offensive conduct.

253.   There is a habit and/or pattern of retaliation.

254.   Defendant subjected Plaintiff to adverse treatment with respect to the terms and conditions of her employment and terminated Plaintiff in retaliation for her complaints and protected activity.

255.   There is a causal connection between Plaintiff's complaints and the adverse actions she has been forced to endure.

256.   Plaintiff has been unjustly disciplined, denied pay, harassed, and terminated in retaliation for her complaints and protected activity.

257.   Defendant has a habit and/or practice of retaliating against employees that complain and engage in protected activity.

258.   Supervisors and managers employed by Defendant engaged in these unlawful retaliatory practices, encouraged and/or condoned these unlawful practices.

259.   Defendant failed to train its employees on its purported antiretaliation policies and reporting procedures.

260.   Defendant's dissemination of any antiretaliation policies and reporting procedures has been ineffective.

261.   Plaintiff has been directly affected by the retaliatory practices described in this Complaint.

262.   Defendant's conduct and the conduct of its employees were so severe or pervasive as to create a retaliatory harassing working environment to which Plaintiff was subjected.

263.   Defendant knew or should have known of the retaliation Plaintiff was forced to endure.

264.   Defendant failed to take any prompt and effective action reasonably calculated to result in the prevention of and/or remedy of the retaliation Plaintiff

was forced to endure.

265.  Defendant condoned the illegal retaliation.

266.  Defendant's retaliatory actions discouraged employees from complaining and engaging in protected activity.

267.  Defendant's actions were and continue to be malicious and Plaintiff has been harmed.

268.  Defendant's actions were and continue to be in reckless disregard of Plaintiff's federally protected rights.

269.  Plaintiff avers that she has been unjustly harassed, unjustly disciplined, denied pay, disciplined and retaliated against, and terminated for engaging in a protected activity, and that there is a causal link between Plaintiff engaging in a protected activity and the adverse actions she suffered, including his termination.

270.  Plaintiff has been retaliated against in violation of Title VII of the "Civil Rights Act of 1964," as amended, and 42 U.S.C. § 1981, as amended.

271.  Defendant has a habit and/or practice of retaliating against employees that engage in protected activity.

272.  Plaintiff has no plain, adequate or complete remedy at law to redress the wrongs alleged herein and this suit for back pay, front pay, compensatory damages, punitive damages, attorney's fees, injunctive relief and declaratory

judgment is his only means of securing adequate relief.

273.   Plaintiff is now suffering and will continue to suffer irreparable injury from Defendant's unlawful policies and practices as set forth herein unless enjoined by this Court.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff requests that this Court adopt jurisdiction of this action and award Plaintiff the following relief:

a.   Enter a declaratory judgment that Defendant's policies, practices and procedures complained of herein have violated and continue to violate the rights of the Plaintiff as secured by Title VII of the "Civil Rights Act of 1964," as amended, and and 42 U.S.C. § 1981, as amended;

b.   Grant Plaintiff a permanent injunction enjoining Defendant's, their Agents, Successors, Employees, Attorneys, and those acting in concert with Defendant or at Defendant's request from violating Title VII of the "Civil Rights of 1964," as amended, and 42 U.S.C. § 1981, as amended;

c.   Grant Plaintiff an Order requiring Defendant make her whole by granting appropriate declaratory relief, compensatory damages (including damages for mental anguish), punitive damages, interest, attorney's fees, expenses, costs; and

d.   Plaintiff prays for such other, further, different or additional relief and

benefits as justice may require.

## COUNT THREE

## NEGLIGENT HIRING, SUPERVISION, TRAINING & NEGLIGENT RETENTION CLAIMS

274.  Plaintiff adopts and realleges the allegations of paragraphs one (1) through two hundred seventy-three (273) as if fully set forth herein.

275.  Plaintiff's claims based on statutory and common law of the State of Alabama arise out of the same facts and incidents, which are set forth herein and are the subject of the Plaintiff's claims based upon Federal Law and are within the pendent jurisdiction of this Court.

276.  Defendant negligently hired, trained, supervised and retained Caucasian employees and/or supervisory employees who subjected Plaintiff to racial discrimination, racial harassment, a racially hostile environment, and retaliation, including, but not limited to Michele Dennis, Monica Pate, Tracie Lovell, Erik Lee, Kerry Gould, and Whitney Kuba.

277.  As a result of such, Plaintiff was caused to be discriminated against because of her race, racially harassed, forced to endure a racially hostile environment, and retaliated against. Defendant's actions have caused Plaintiff to suffer mental anguish, shame, embarrassment, humiliation and other harm.

278.  Defendant knew, or clearly should have known, of its employee's unfitness for their positions and the feasibility of their continued discrimination,

harassment and retaliation of Plaintiff.

279.   Defendant failed to take steps to prevent its Caucasian employees from discriminating against Plaintiff, harassing the Plaintiff, and retaliating against Plaintiff.

280.   Defendant ratified, authorized and/or condoned the actions of its Caucasian employees.

281.   Defendant is guilty of the negligent hiring, training, supervision and negligent retention of Caucasian employees.   As a result of the illegal conduct of Defendant, Plaintiff has suffered financially, physically and emotionally.

## PRAYER FOR RELIEF

WHEREFORE Plaintiff demands judgment against Defendant for an award of compensatory and punitive damages as deemed just by a struck jury, plus costs, interest, attorney fees, and any and all relief to which he may be entitled.

## COUNT FOUR

## TORT OF OUTRAGE CLAIMS

282.   Plaintiff adopts and realleges the allegations of paragraphs one (1) through two hundred eighty-two (282) as if fully set forth herein.

283.   This claim is brought against Defendant for engaging in such outrageous conduct.

284.   Defendant outrageously and intentionally inflicted emotional distress

upon Plaintiff by allowing and continuing to allow Plaintiff to be repeatedly subjected to racially abusive conduct, racial harassment, racial discrimination, retaliation, harmful, and hurtful comments, racially offensive comments, while Plaintiff attempted to carry out her job duties.

285.    Defendant ratified and/or condoned the actions of its Caucasian employees and managers, which amounted to the tort of outrage. Defendant's Caucasian employees, including, but not limited to, Michele Dennis, Monica Pate, Tracie Lovell, Erik Lee, Kerry Gould, and Whitney Kuba, engaged in racially offensive conduct, racial discrimination, retaliation, which amounted to the tort of outrage.

## PRAYER FOR RELIEF

WHEREFORE Plaintiff demands judgment against Defendant for an award of compensatory and punitive damages as deemed just by a struck jury, plus costs, interest, attorney fees, and any and all relief to which he may be entitled.

## PLAINTIFF DEMANDS TRIAL BY STRUCK JURY

CYNTHIA FORMAN WILKINSON
State Bar ID No:  ASB-9950-L68C
Attorney for Plaintiff

**OF COUNSEL:**
**WILKINSON LAW FIRM, PC**
215 N. Richard Arrington Jr. Blvd.
Suite 200
Birmingham, Alabama 35203
Tel.: (205) 250-7866
Fax: (205) 250-7869
E-mail: wilkinsonefile@wilkinsonfirm.net

**PLAINTIFF'S ADDRESS:**
Ms. Kathy Williams
c/o WILKINSON LAW FIRM, PC
215 North Richard Arrington, Jr. Blvd.
Suite 200
Birmingham, Alabama 35203

**PLEASE SERVE DEFENDANT AT THE FOLLOWING ADDRESS:**
Cellco Partnership d/b/a Verizon Wireless
c/o CT Corporation System
2 North Jackson Street, Suite 605
Montgomery, AL 36104

# EXHIBIT 1

| CHARGE OF DISCRIMINATION | AGENCY | CHARGE NUMBER |
|---|---|---|
| This form is affected by the Privacy Act of 1974; See Privacy Act Statement before completing this form. | FEPA | |
| | EEOC | |

| and EEOC | |
|---|---|
| State or local Agency, if any | |

| NAME (Indicate Mr., Ms., Mrs.) <br> Kathy Williams | HOME TELEPHONE (Include Area Code) | | |
|---|---|---|---|
| STREET ADDRESS     CITY, STATE AND ZIP CODE | | SSN: | DATE OF BIRTH |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (If more than one list below.)

| NAME <br> Verizon | NUMBER OF EMPLOYEES, MEMBERS <br> 600+ | TELEPHONE (Include Area Code) <br> 205-402-3974 |
|---|---|---|
| STREET ADDRESS     CITY, STATE AND ZIP CODE <br> 3080 John Hawkins Parkway, Hoover, Alabama 35244 | | COUNTY <br> Jefferson |

| NAME | TELEPHONE NUMBER (Include Area Code) |
|---|---|
| STREET ADDRESS     CITY, STATE AND ZIP CODE | COUNTY |

| CAUSE OF DISCRIMINATION BASED ON (Check appropriate box(es)) | DATE DISCRIMINATION TOOK PLACE <br> EARLIEST (ADEA/EPA)    LATEST (ALL) |
|---|---|
| XX RACE    COLOR    SEX    RELIGION    AGE <br><br> XX RETALIATION    NATIONAL    ORIGIN    DISABILITY    OTHER (Specify) | 2014 – July 2015 <br><br> CONTINUING ACTION |

RECEIVED
AUG 17 2015
E.E.O.C.
BIRMINGHAM DISTRICT

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s) I am African American and I began working for the above named employer ten years ago. I was terminated on or about July 16, 2015. At the time of my termination I was employed as a ASM or sales employee at the Riverchase location. Whitney Kuba was the Caucasian store manager at the time of my termination. Monica Pate was the Caucasian district manager at the time of my termination.

Monica Pate informed me that I was being terminated based on their investigation about an incident regarding the theft of my cell phone. On or about June 17, 2015, I was working in the Riverchase store and my cell phone was taken. I was waiting on customers when I noticed my cell phone was gone. I had my cell phone out and set to play music on speakers we were trying to sell. I was demonstrating the speakers to the customers that came in the store. I noticed the music stopped playing and that my cell phone was gone. I asked all of the customers in the store if they saw my phone. I informed Whitney Kuba, Caucasian Store Manager, that my cell phone had been taken. Ms. Kuba told me not to worry about the theft of my phone and to just fill out an incident report. Shortly after I reported the theft to Ms. Kuba, Chadwick, an operations specialist, told me Ms. Kuba wanted me to call the Police. I asked why I was instructed to call the police, as we had never engaged in this practice when this had happened in the past. I asked Chadwick to call the police since he was the person Ms. Kuba talked to.
(particulars continued on second page)

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY - (When necessary for State and Local Requirements) <br> _Amy M. Er..._ <br> I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
|---|---|
| I declare under penalty of perjury that the foregoing is true and correct. <br><br> _Kathy Willia..._ <br> Date     Charging Party (Signature) | SIGNATURE OF COMPLAINANT <br><br> _Kathy Willia..._ <br><br> SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE <br> (Day, month, and year) |

RECEIVED

AUG 17 2015

E.E.O.C.
BIRMINGHAM DISTRICT

KATHY WILLIAMS V. VERIZON
EEOC CHARGE
PAGE 2

The police arrived at the store and I told them my cell phone had been taken. The police questioned some of the customers in the store. I asked the police to talk to everyone in the store. One of the police officers went outside to look inside a customer's car. The police officer told me that he believed my cell phone was in the customer's car. Ms. Kuba, Caucasian store manager, told me to go on my lunch break. When I came back from lunch Ms. Kuba called me to come in Lee Ann's office. Lee Ann Barrett was also in the office. Ms. Kuba stated they had reviewed the video. On the video you could see what appeared to be a customer putting something in his pocket. Ms. Kuba tried to say that the video showed something totally different. I asked them if they saw the same video what the problem was. I was then asked to write a statement about my cell phone being stolen.

On or about June 23, 2015, Michelle Dennis, Caucasian Human resources employee, came to the store to investigate my cell phone being stolen. Ms. Dennis talked to me and asked me what happened. I let Ms. Dennis know I had already written a statement about the incident but Ms. Kuba had asked me to keep it to myself. I told Ms. Dennis what happened. Ms. Dennis asked me about the police and I told her I was not sure why I was told that the police needed to be called because in my ten years of employment that had never been done before. I asked Ms. Dennis why she was here for something so simple. Ms. Dennis said she was here to make sure I did not shout in the store asking if someone stole my phone. Ms. Dennis also asked me if I said a customer had my cell phone in their pocket. I told Ms. Dennis that I did not shout in the store, but did quietly asked customers if they saw my cell phone. I told Ms. Dennis that I did not accuse a customer of having my cell phone in his pocket.

On or about July 16, 2015, Ms. Pate, the Caucasian district manager, came to talk to me. I asked Ms. Pate if I was being written up and where was the write up. I also asked Ms. Pate what I should have done differently. Ms. Pate did not answer my question. I was told by Ms. Pate that I was being terminated. Ms. Pate then told me she would escort me out of the store. I informed her that I had been working for the company for ten years and I did not need an escort out of the store.

Around April 2015, within a few months before my termination Monica Pate confronted me and asked if I said Whitney Kuba, the new Caucasian store manager, was prejudice. I told them I did not make this statement about Ms. Kuba. I was then asked if I said the reason Monica Pate was in a lawsuit was because Whitney Kuba was a store manager. I told Ms. Pate that I did say the reason Verizon was in a lawsuit for race discrimination was because she hand picked white employees for jobs and promised white employees jobs before they were posted. I also told Ms. Pate that Ms. Kuba said the "fat black employees don't fit the mold." I complained that it the way they hand picked whites for promotions was discriminatory. Ms. Pate's assistant, Eloy Escobar, was also present for this conversation.

African American employee Elliott Carter, was employed in Tuscaloosa at the McFarland Verizon store. He applied for a business sales position and was denied the position. A less qualified Caucasian, Robin Harris, received the position. Monica Pate made the decision to hire Robin Harris, along with input from Human Resources. Mr. Carter filed an EEOC charge and later filed a lawsuit against Verizon. Mr. Carter's lawsuit was the lawsuit I was questioned about and one of the racial discriminatory incidents I was complaining about when I complained that white employees were hand picked and selected for promotions before the positions were ever posted.

Around May 2015, Whitney Kuba came to the store as our store manager. We all knew she received the position before she came to the Riverchase store. I was told by other employees that Ms. Kuba was stating that I would never be a manager long for the company. I was also told that Ms. Kuba sated that another African American employee named Tinker would never be a manager in a redesigned store and that Abdul, African American employee, would not be a manager for long because he was too loud and black.



KATHY WILLIAMS V. VERIZON
EEOC CHARGE
PAGE 3

On July 16, 2015, after I was told by Monica Pate that I was being terminated, I called Traci Lovell, Human Resources in Atlanta. I told Ms. Lovell I was calling about my termination. Ms. Lovell told me that I was terminated for an egregious situation. I asked Ms. Lovell where my write ups were and that I went from no write ups to termination. I also asked Ms. Lovell where the customer complaint was, because I was never informed that a customer complained. Ms. Lovell told me there was no reprimand issued to me. I told Ms. Lovell about my complaints to Monica Pate and Mr. Escobar about Whitney Kuba and about racial comments made by Ms. Kuba and that she stated I was racist.

Before I worked at the Riverchase location I worked at the Trussville location. The store manager was Kerry Gould, Caucasian. Ms. Monica Pate became the district manager and Mr. Gould's supervisor while I worked at Trussville. While I worked at the Trussville location I heard Mr. Gould talk about KKK protests in the store. I told Mr. Gould that it sounded like he was a KKK member because of the way he was talking. I heard Mr. Gould state in the store that President Obama was only for the black employees. I also heard Mr. Gould say that no one wanted to work at the Trussville store because it had the "black clique" and that he wanted to "change the vernacular" of the Trussville store because it was "too hood." African American employees working in the Trussville store reported racial complaints about Mr. Gould. Michelle Dennis in Human resources investigated the racial complaints against Mr. Gould. No action was taken against Mr. Gould who reported directly to Monica Pate.

After I was terminated Michelle Dennis called me and I told her about my conversation with Traci Lovell. Ms. Dennis stated that Ms. Lovell wanted her to call me. I complained to Ms. Dennis that I was terminated because of my race, African American, and in retaliation for my complaints to Monica Pate.

During the last few years of my employment I have seen Verizon demote and terminate African American employees and replace them with Caucasian employees.

I have been discriminated against and terminated because of my race, African American, and /or terminated in retaliation for my complaints of racial discrimination and engaging in protected activity. I have been discriminated against and retaliated against in violation of Title VII of the Civil Rights Act of 1964, as amended.


_KATHY WILLIAMS_

E.E.O.C.
BIRMINGHAM DISTRICT

# EXHIBIT 2

EEOC Form 161-B (11/09)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| | |
|---|---|
| To: Kathy Williams | From: Birmingham District Office<br>Ridge Park Place<br>1130 22nd Street<br>Birmingham, AL 35205 |

☐ *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 420-2015-02601 | Arthur I. Reid,<br>Investigator | (205) 212-2106 |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA must be filed in a federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

☒ More than 180 days have passed since the filing of this charge.

☐ Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

☒ The EEOC is terminating its processing of this charge.

☐ The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, the paragraph marked below applies to your case:

☐ The EEOC is closing your case. Therefore, your lawsuit under the ADEA must be filed in federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

☐ The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.

If you file suit, based on this charge, please *[illegible] to the office.*

On behalf of the Commission

NOV 08 2016

Delner Franklin-Thomas,
District Director

*(Date Mailed)*

Enclosures(s)

| | |
|---|---|
| cc: VERIZON WIRELESS<br>c/o Michi Haire<br>Assoc. Director HR Compliance<br>1 Verizon Way<br>Basking Ridge, NJ 07920 | Kathy Williams<br>c/o Cynthia Wilkinson<br>WILKINSON LAW FIRM, PC<br>215 North Richard Arrington, Jr., Boulevard<br>Birmingham, AL 35205 |

Enclosure with EEOC
Form 161-B (11/09)

# INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.
If you also plan to sue claiming violations of State law, please be aware that time limits and other
provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS** -- **Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* this Notice. Therefore, you should **keep a record of this date**. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was** *mailed* to you (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS** -- **Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than** **2 years (3 years)** before you file suit may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit *before 7/1/10* -- *not 12/1/10* -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice **and** within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION** -- **Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do **not** relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE** -- **All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, please make your review request **within 6 months** of this Notice. (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*